HARRY A. MORRISSEY, COMPLAINANT-APPELLANT, AND JEFFREY TUCKER MORRISSEY, AN INFANT, BY HIS NEXT FRIEND, ANNA TOFT MORRISSEY, COMPLAINANT, v. JANICE TUCKER MORRISSEY (FALSELY CALLED JANICE TUCKER MORRISSEY STEIKER) AND SIDNEY G. STEIKER, DEFENDANTS-RESPONDENTS.

Argued January 10, 1949—Decided February 28, 1949.

*Mr. Morris N. Hartman* argued the cause for complainant-appellant (*Mr. Dougal Herr*, attorney).

*Mr. Max Mehler* argued the cause for defendant-respondent Sidney G. Steiker (*Messrs. Gross, Blumberg, Mehler & Goldberger*, attorneys).

The opinion of the court was delivered by

WACHENFELD, J. Appellant Harry Morrissey and respondent Janice were married and a child was born. Morrissey went to war; Janice went to Reno and secured a divorce. She immediately married Steiker and had a child by him. A change of mind brought about a reconciliation with Morrissey and she is now back living with him. The marital status became entangled and embarrassing and in an attempt to adjudicate and maneuver it within legal confines this suit was started, in effect to annul the Steiker marriage by vitiating the Nevada decree. Janice by counterclaim sought the same relief, leaving Steiker as the only defendant.

The first difficulty encountered is one of domicile, upon which the opinion below was bottomed.

Appellant and Janice lived in New Jersey and were married here on November 5, 1939. On the day after the marriage they went to Boston, Massachusetts, where he was then working as a musician. They lived first in an apartment on Beacon Street and then occupied an apartment in Brookline, Massachusetts. He played in an orchestra known as a "drifting band" and in that capacity toured Virginia. He then gave up the connection with the orchestra, returned to Massachusetts with his wife, where he matriculated at Harvard University, and took another apartment in Brookline. Thereafter he left school and entered the business of booking orchestras and also playing in them. This venture being unsuccessful, he took a position in Lynn, Massachusetts, in January 1943 which he retained until shortly before he was drafted into the armed forces on March 8, 1944.

The apartment in Brookline was not dismantled upon his entering the service but kept intact and subleased to a tenant

who paid $25 a month to Janice for the rental of the furniture which belonged to Morrissey, and $45 directly to the landlord. Morrissey was allowed to keep certain personal belongings in the apartment, such as "photograph albums," "some odds and ends" and "little things," which were still there at the time of final hearing. In October 1944 he received a soldier's ballot from the State of Massachusetts and voted it.

Upon Morrissey's entry into the army Janice spent a good deal of her time in New Jersey but did not establish a home here. She stopped in Bayonne with her mother; she also went to Belmar, Linden and then to Deal, whence she left to go to Nevada in November 1945.

On January 4, 1946 she filed a suit for divorce against Morrissey in Nevada, he being served overseas with process. The Nevada court appointed counsel to represent Morrissey's interest under the Soldiers' and Sailors' Relief Act, but upon his return in February 1946 Morrissey consulted his own counsel in New Jersey and retained a different Reno attorney to represent his interests. Upon the advice of the Reno attorney Morrissey executed a separation agreement to be approved by the Nevada court allowing visitation to the child and relieving Morrissey of the obligation of supporting Janice. Morrissey would have preferred a reconciliation with his wife but she, however, was unwilling. His counsel thereupon filed an answer and admitted Janice's domicile in Nevada. A hearing was held in which he cross-examined Janice concerning her Nevada residence and a final divorce decree was entered on March 21, 1946. Janice the same day flew East and married Sidney G. Steiker and lived with him until August 1946. She subsequently bore his child, custody of whom was given to Steiker, and is now living with Morrissey.

The infant, Jeffrey T. Morrissey, was made a party complainant on the theory that he had a property right and interest in the marriage status of his parents and that the fraudulent dissolution thereof was a violation of his rights. The court below held there was no authority for this procedure and upon motion dismissed the bill as to the child, from which no appeal is taken.

From these facts the court below concluded Morrissey and Janice at the time the Nevada divorce was obtained were domiciled in the State of Massachusetts and therefore had no standing to challenge the validity of the Nevada decree in the courts of this State by these proceedings.

■■■■ There is ample evidence in the record to support the finding that neither Morrissey nor Janice was domiciled in New Jersey at the time the Nevada divorce decree was obtained. Hence, the nature of the proceedings involved becomes a matter of concern in determining the relief to be granted and the jurisdiction to be assumed. A complainant has no legal status in this State to attack the validity of a divorce decree of a sister state in a direct proceeding instituted for that specific purpose when at the time the decree of divorce was rendered neither the complainant nor the other spouse was a resident of this State. *Floyd v. Floyd*, 95 *N. J. Eq.* 661 *(E. & A.* 1924); *Greensaft v. Greensaft*, 120 *N. J. Eq.* 208 *(E. & A.* 1936). Refusing to adjudicate the validity of a Nevada divorce decree which was made the subject of attack in a direct proceeding and determining that there was no legal basis for the interposition of a court of equity, in *Floyd v. Floyd, supra*, the court said:

"This is a burden which our courts are unwilling to assume upon the ground that such a procedure is against public policy. We are only concerned in passing upon the validity of a judgment of a sister state where an attempt is made to enforce such judgment in this state; and when the validity of such judgment is attacked upon the ground of fraud or want of jurisdiction of the foreign forum over the subject-matter or of the person.

"But to entertain a suit of the character, as here, would have a pernicious tendency to convert this state into a mecca for disgruntled divorcees."

■■■■ But where the validity of such a decree is collaterally attacked, either in defense or otherwise, the issue may be determined despite the fact that at the time of the divorce decree neither party was domiciled in this State. Under these circumstances our courts may examine the judgment to ascertain whether it is invalid either upon the ground of fraud or lack of jurisdiction. *Robins v. Robins*, 103 *N. J. Eq.* 26

*(Ch.* 1928*); Meade v. Mueller,* 139 *N. J. Eq.* 491 *(Ch.* 1947*).*

In the case *sub judice* the bill seeks primarily to have the Nevada decree adjudged null and void and constitutes a direct attack upon the judgment of a sister state. It is our settled policy not to entertain such an application.

Even assuming jurisdiction in this matter, the relief asked for should be denied. Both parties were represented by counsel in the foreign proceedings. Morrissey made an appearance through his own counsel, who participated in the trial, and both husband and wife were fully cognizant of the purpose of the litigation and the relief there prayed for. Where a party submits to the jurisdiction of a court of a sister state and actively participates in its proceedings, he is bound by its determination that it had jurisdiction of the subject matter and of the parties. *Davis v. Davis,* 305 *U. S.* 32, 83 *L. ed.* 26 *(*1938*).* Parties who have had ample opportunity to present their contentions cannot, after a contest, be permitted to relitigate the issues. *Williams v. North Carolina,* 325 *U. S.* 226, 89 *L. ed.* 1577 *(*1945*); Sherrer v. Sherrer,* 334 *U. S.* 343, 92 *L. ed.* 1055 *(*1948*); Coe v. Coe,* 334 *U. S.* 378, 92 *L. ed.* 1064 *(*1948*).* Our courts have held that in cases of this type, where a party has once had his day in court in another state, he cannot seek to relitigate the issues in the courts of New Jersey. *Hubschman v. Hubschman,* 140 *N. J. Eq.* 284 *(E. & A.* 1947*).*

The appellant also complains that after the conclusions were filed but before the decree was entered he asked for leave to re-argue the case and present further evidence on the presumption of domicile. He does not claim newly discovered evidence but merely seeks an opportunity to present more evidence on the same issues. The allowance of the re-argument was purely discretionary with the trial court and we find no abuse of that discretion entitling the appellant to relief on this ground.

It is also argued that counsel fees should not have been awarded, but this too is a matter of sound discretion which we do not feel justified in disturbing. *Shaffer v. Shaffer,* 129

*N. J. Eq.* 42 *(E. & A.* 1941); *Martindell v. Martindell,* 133
*N. J. Eq.* 267 *(E. & A.* 1943).

The decree below will be affirmed.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE,
HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For reversal:* None.