20 N.J. Super. 229 (1952)
89 A.2d 707
GENEVIEVE T. WOODHOUSE, PLAINTIFF-RESPONDENT,
v.
RICHARD P. WOODHOUSE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1952.
Decided June 11, 1952.
*231 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. Samuel Rochlin argued the cause for plaintiff-respondent (Mr. Charles H. Roemer, attorney).
Mr. John J. Connell argued the cause for defendant-appellant.
The opinion of the court was delivered by FRANCIS, J.C.C.
The parties to this action were married in New Jersey on September 3, 1939, and thereafter lived together here until their separation on or about July 1, 1946. At some time thereafter, the exact time not being clear from *232 the record, except that it was prior to February 4, 1948, the wife became a resident of New York. Where the husband resided from the separation on is not definitely shown; an affidavit filed by him says that he remained amenable to service of process in Trenton, New Jersey, because of his employment there.
On February 4, 1948, with the advice and assistance of individual counsel, they entered into a written agreement which recited that they were living separate and apart because of irreconcilable differences and that the wife was about to commence suit for divorce. By this instrument they settled certain property claims and the husband agreed to pay her $50 a week and an additional $50 a month, both payments to be tax-free, during her lifetime or until she remarried, in settlement of her claim for "alimony, support and maintenance." In addition, Woodhouse bound himself to pay all doctor, dentist, hospital, nurse, drug, and medicine bills during the same period, and Mrs. Woodhouse agreed to apply any income she might receive from any source in reduction of the alimony or maintenance payments. It was also provided that in case either party applied for a divorce the agreement was to be in full settlement of their respective property rights and any claim for alimony.
On March 26, 1948, Mrs. Woodhouse obtained a decree of divorce in Nevada. The decree sets forth that the defendant had entered a general appearance in the action and was represented at the trial by his attorney; it makes a finding that the court had jurisdiction over the parties and of the cause of action and that the allegations of the wife's complaint are true. It grants a divorce on the ground of extreme cruelty and says that "the agreement of February 4, 1948, is adopted, ratified and approved and made a part of this decree by reference thereto." We pause to note that under the practice in New Jersey, where such an agreement is approved and made part of the judgment of the court, language is employed directing the husband to pay in accordance therewith. 12 New Jersey Practice (Herr, Marriage, *233 Divorce and Separation), p. 42, sec. 1489, Forms. This is the better course because it gives emphasis to the doctrine that the court is the final arbiter of a husband's alimony obligation and that an agreement between the parties will be adopted only where it represents the fair and equitable measure of that obligation. Lum v. Lum, 138 N.J. Eq. 198 (Ch. 1946). In some instances Nevada seems to follow our practice. Hooker v. Hooker, 130 Conn. 41, 32 A.2d 68, 71 (Sup. Ct. Err. 1943).
Thereafter, on May 6, 1948, Woodhouse remarried in Yardley, Pennsylvania, and lived there with his second wife from that date until May, 1951. Then they took up residence in Stockton, New Jersey, where they still reside.
On June 22, 1951, plaintiff, alleging to be a resident of the State of New York, brought this action for the recovery of arrearages under the Nevada decree which she claimed then amounted to $2,533.87. Defendant answered, denying the arrearages and setting up six separate defenses: (1) that the alimony agreement was void as against public policy; (2) it acquired no validity from its inclusion in the Nevada decree; (3) the divorce decree is void as having been made without jurisdiction of the subject matter; (4) or of the parties; (5) as a fraud upon the courts of Nevada and of New Jersey; and (6) the decree being void, it cannot serve as the basis for recovery in this action. Plaintiff moved to dismiss the six defenses. Prior to the argument of the motion a pretrial conference was held and an order entered, signed by the court and the attorneys, embodying the result thereof.
Subsequently the motion to strike was granted and the court said further, "there being no issue of fact, the plaintiff's motion for summary judgment will be entered." Judgment was entered for plaintiff and against defendant in the amount of $3,950.87, plus interest in the amount of $144.67. Defendant now appeals.
The first contention presented is that the court erroneously entered summary judgment. The point is well taken. Plaintiff's motion was simply to strike the six defenses. The *234 notice of motion did not ask for summary judgment and the affidavit filed in support thereof did not assert any fixed amount of arrearages. It alleged that after the entry of the Nevada decree and until February 1, 1950, the prescribed alimony was paid; thereafter and until the institution of this suit only partial payments were made, the deficiency not being specified, and since then no payments had been made. Not only was the total delinquency not asserted but it was impossible to compute the debt from the affidavit. In view of this situation and the nature of the motion defendant did not deal with the question of arrearages in his answering affidavit. Nevertheless judgment was entered in the amount referred to, which is neither the sum sued for in the complaint nor the amount claimed in the pretrial order nor an amount which is supported by the pleadings or any affidavit. Respondent's appendix includes a letter written by her attorney to the trial court, no copy of which was sent to the defendant, which contains the figures appearing in the judgment. Correspondence between the attorneys subsequent to the entry of judgment is attached to appellant's reply brief and appendix, and a letter from respondent's attorney indicates that part of the judgment was for medical expenses and taxes, which were not referred to in the complaint, pretrial order or affidavit. Moreover, as already indicated, the Nevada decree required plaintiff to credit against defendant's obligation any income she received. Neither in plaintiff's affidavit nor in her attorney's letter to the trial court is there any reference to income received by her. As the result of the correspondence appearing in the appendix, over four weeks after the judgment, plaintiff furnished an affidavit to Woodhouse's attorney to the effect that she had a net income between March 15, 1951, and January 1, 1952, of $1,956.87. Yet no mention was made of this in the letter to the court containing the figures on which the summary judgment was based.
The legal impropriety of the summary judgment and of the procedure by which it was obtained is manifest.
*235 Respondent argues that since the pretrial order contains no specific denial of arrearages, appellant is barred from litigating the issue. This argument has no substance. The pretrial order recites:
"This is a suit wherein the plaintiff seeks to recover what she alleges to be a balance due for unpaid alimony amounting to $4137.87 as of November 1, 1951. The complaint sets forth an arrearage of $2533.87 and since the suit was started an additional amount of $1602 has accrued, making the balance of $4135.87 which plaintiff claims." (Italics ours.)
The order then makes reference to the defendant's contention that the Nevada decree is void for the various reasons assigned in the answer, and to plaintiff's reply of estoppel. And it concludes: "There are no stipulations." No reference is made to the denial of arrearages contained in defendant's answer and no abandonment of the issue thus created is in any way indicated. The precise problem was dealt with in Schanerman v. Everett & Carbin, Inc., 18 N.J. Super. 248, 87 A.2d 28 (App. Div. 1952), and the court said:
"Plaintiff also argues that, because defendant specified only the denial of the making of any agreement as a defense in the pretrial order, plaintiff was obliged to meet only that issue. This plainly is without merit. The question of Driver's financial readiness and ability was put in issue by defendant's answer denying the allegations of paragraph five of the complaint that `plaintiff produced a purchaser, ready, willing and able to purchase said premises.' Rule 3:16 as amended and in effect at the time of the pretrial conference provides that the pretrial order `with the pleadings as ordered to be amended controls the subsequent course of action, unless modified at the trial to prevent manifest injustice.' Neither expressly nor inferentially is there an admission in the pretrial order of Driver's financial readiness and ability nor any waiver of proof of that fact. In light of the amended rule mere omission to iterate therein the denial in the answer does not have the effect of such admission or such waiver."
(Cf. Hodgson v. Pohl, 16 N.J. Super. 87 (App. Div. 1951), Id., 9 N.J. 488, June, 1952).
This case presents in crystal clear and unmistakable fashion the value of the pretrial conference. It places emphasis on the already obvious fact that the technique adequately employed *236 will expedite the disposition of cases and avoid appeals. The Second Report of the Supreme Court Committee on Problems of Pretrial Conference and Calendar Control (72 N.J.L.J. 425, December 22, 1949) was designed to focus the attention of bench and bar upon the proper use of the rule (3:16). Among other things it said:
"The rule is designed to reduce the actual trial of cases to a determination of the basic factual and legal issues between the parties and to make certain that the parties are fully cognizant of those issues in advance of the trial * * *."
A form of notice of pretrial conference is prescribed by the rules (Form 33A, Civil Procedure Forms) and it specifically outlines constructive steps to be taken by counsel in preparation therefor. The committee report suggests that after the receipt of this notice each attorney should examine his file and make certain that it is sufficiently complete to permit him to go to trial immediately and it continues:
"At this point a very important step becomes urgent. Counsel should communicate with each other and discuss their factual and legal contentions, attempt to agree upon factual stipulations and admissions, upon the legal issues to be presented, upon items of damage, upon exhibits, and explore the settlement situation. * * * This preparation conscientiously engaged in will insure and guarantee a thorough and satisfactory pretrial."
In the problem under consideration, if counsel had discussed with each other the amount of the arrearages of alimony, the income credit to be allowed the defendant and the claim for medical, hospital, etc., bills, each would have known the position of the other on the subject before the conference. Even if this had not been done, had the matter been discussed openly at the conference, it is highly probable that all, or certainly a part, of plaintiff's claim would have been agreed upon. Or had the court made the inquiry it is even more likely that some stipulation would have been made and included in the pretrial order. Such an order would have avoided this appeal.
*237 Appellant also challenges the validity of the order striking the six defenses. The memorandum of the court predicates the action entirely upon Musiker v. Schactman, 133 N.J.L. 110 (Sup. Ct. 1945). Involved there was an action at law for arrearages under a Nevada divorce decree. At the trial defendant sought to attack the validity of the decree on the ground that it resulted from the collusion of the parties. The trial court declined to admit the proof and the Supreme Court sustained him, saying:
"The proper procedure to raise this question which is in essence fraud is by an original bill of chancery or by collateral attack in a proceeding for divorce or separate maintenance."
This 1945 decision was near the end of the trail for the separate and independent jurisdiction of the Court of Chancery. The 1947 Constitution blazed new and more modern judicial paths. Under Article VI, Section III, paragraph 4, subject to rules of the Supreme Court, the Law and Chancery Divisions are each empowered to exercise the powers and functions of the other and legal and equitable relief is required to be granted in any cause so that "all matters in controversy between the parties may be completely determined." As to this remedial innovation, the Superior Court had occasion to say:
"Our new Judicial Article and Court Rules contemplate that adequate means be afforded to enable generally the determination at one time and place of all matters in controversy between the parties." Ritepoint Co. v. Felt, 6 N.J. Super. 219 (App. Div. 1950).
Tested by these considerations, Musiker v. Schactman can no longer be considered a controlling doctrine. We hold that the defenses interposed here were properly and necessarily included in the answer (Rule 3:12-2), and that it was not essential to raise the issue by way of equitable counterclaim seeking a judgment declaring the foreign decree void in this state.
Turning to the defenses, we find them to be inadequately pleaded. Each of them simply states a legal conclusion, *238 without any recitation of facts or particulars. The defenses predicated upon alleged fraud and collusion run directly counter to Rule 3:9-1. However, we have considered the affidavit filed by the defendant in opposition to the motion to strike for the purpose of determining if any factual issue is presented thereby which would necessitate a ruling that the defenses must await disposition at a trial. While it charges "collusion" between plaintiff and defendant to obtain the decree, and "fraud" on the Nevada and New Jersey courts, and recites certain conclusions with respect to plaintiff's residence intention, it sets forth no adequate supporting facts. And it admits that defendant entered a general appearance in Nevada although he made "no attack on the jurisdictional facts."
With respect to the alimony agreement of February 4, 1948, no allegation appears in the affidavit that it was entered into to facilitate a divorce between the parties. A bargain between a husband and wife for alimony designed to make a divorce possible is contrary to public policy and void. Staedler v. Staedler, 6 N.J. 380 (1951); Ferrante v. Philpott, 1 N.J. Super. 393 (Ch. 1948); Wolff v. Wolff, 134 N.J. Eq. 8 (Ch. 1943); Hemingway v. Ball, 118 N.J. Eq. 378 (Ch. 1935). However, a written compact between them made after separation by which a division of assets and fair and equitable alimony are accomplished is valid. Dennison v. Dennison, 98 N.J. Eq. 230 (Ch. 1925); Calame v. Calame, 25 N.J. Eq. 548 (E. & A. 1874); 2 Restatement of Law of Contracts, sec. 584. The record here presents no proof that facilitation of divorce was a motivating factor in the making of their agreement. As already indicated, defendant engaged counsel, entered a general appearance and was represented at the trial of the divorce suit. Under the circumstances shown he is bound by the judgment and cannot now attack it. Morrissey v. Morrissey, 1 N.J. 448 (1949); Hubschman v. Hubschman, 140 N.J. Eq. 284 (E. & A. 1946); Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951).
*239 Another insuperable barrier stands in the way of defendant's attempted assault on the decree. The barrier is estoppel, and in this instance it has its roots in law, equity and good conscience. Not only did Woodhouse appear in the Nevada court, but he took advantage of the decree  which he seeks to brand as fraudulent and void because of his own collusion  by remarrying 41 days after its entry. And, according to the record, he is living with his second wife. There appears to be no justification in reason or morality for undertaking an attack which, if successful, would make his present marriage void, put himself in possible criminal jeopardy for bigamy (State v. Najjar, 2 N.J. 208 (1949)), and leave his first wife free to seek another divorce judgment on the ground of adultery. That the doctrine of estoppel is operative in this situation is plain. Parmalee v. Hutchins, 238 Mass. 561, 131 N.E. 443 (Sup. Jud. Ct. 1921); 12 A.L.R.2d 153, 169; Restatement, Conflict of Laws, sec. 113.
Under all the circumstances the judgment is reversed and the record remanded, but solely for a proper determination of the defendant's indebtedness under the Nevada decree.