GENEVIEVE T. WOODHOUSE, PLAINTIFF-RESPONDENT, v. RICHARD P. WOODHOUSE, DEFENDANT-PETITIONER.

Argued December 1, 1952—Decided January 19, 1953.

*Mr. John J. Connell* argued the cause for the defendant-petitioner.

*Mr. Samuel Rochlin* argued the cause for the respondent (*Mr. Manuel Korn* on the brief; *Mr. Charles H. Roemer,* attorney).

The opinion of the court was delivered by

OLIPHANT, J. This matrimonial case was certified by this court on defendant's petition, 10 *N. J.* 315, to review a judgment of the Superior Court, Appellate Division, 20

*N. J. Super.* 229, which affirmed all but that portion of a summary judgment entered in the Law Division determining the amount of defendant's indebtedness for arrearages of alimony awarded to the plaintiff under a Nevada final decree of divorce *a vinculo*.

Plaintiff and defendant were married December 23, 1939 and separated July 1, 1946, since which time they have lived apart. On February 4, 1948 they executed a separation agreement whereunder the defendant agreed to pay the plaintiff certain weekly and monthly sums of money. This agreement, purporting to settle their property rights and alimony payments, was entered into on the advice and counsel of their respective attorneys in this State. Within a week thereafter plaintiff went to Nevada and on March 26, 1948 obtained there a final decree of divorce in which was incorporated the agreement of February 4, payments pursuant thereto being adjudged to constitute alimony. The defendant entered a general appearance in the Nevada proceedings.

After the plaintiff was awarded her decree she immediately returned to her home in New York. Defendant on May 6, 1948 remarried and has since lived with his second wife. Defendant made the alimony payments provided for in the Nevada decree until February 1950, but thereafter fell into arrears and as a result, on June 22, 1951, the instant action at law was instituted to recover the arrearage due under the Nevada decree. *Bullock v. Bullock*, 57 *N. J. L.* 508 (*Sup. Ct.* 1895).

The defendant in his answer set up six separate defenses, all of which attacked the validity of the Nevada decree. The plaintiff replied setting up an estoppel by reason of the defendant's remarriage and asserting that the defense constituted a collateral attack on a judgment of a sister state entitled to full faith and credit under the federal Constitution, and further that the defendant was in laches. Plaintiff then moved to strike the defenses and affidavits were filed by both parties. The trial court granted the motion to strike

and entered summary judgment in favor of the plaintiff. On appeal the Appellate Division affirmed the lower court on the question of defendant's liability but reversed on the question of the *quantum* of damages and the case was remanded solely for a determination of the amount of defendant's indebtedness.

The contention here is that the Nevada decree is void, but this we find is without merit under the facts exhibited, and that the decree is entitled to full faith and credit under *Art.* 4, *sec.* 1 of the Federal Constitution. The United States Supreme Court has held that full faith and credit should be accorded a decree of a sister sovereign state if a defendant spouse appeared in the divorce proceedings and contested the issues, *Sherrer v. Sherrer*, 334 *U. S.* 343, 68 *Sup. Ct.* 1087, 92 *L. Ed.* 1429 (1948); or appeared and admitted the domicile, *Coe v. Coe*, 334 *U. S.* 378, 68 *Sup. Ct.* 1094, 92 *L. Ed.* 1451 (1948); or was personally served with process in the state which awarded the decree, *Johnson v. Muelberger*, 340 *U. S.* 581, 71 *Sup. Ct.* 474, 95 *L. Ed.* 552 (1951); and if the spouse either admits or contests the issue of plaintiff's domicile or is personally served in the divorce state he is barred from attacking the decree collaterally in a sister state, *Cook v. Cook*, 342 *U. S.* 126, 72 *Sup. Ct.* 157, 96 *L. Ed.* —— (1951).

In the instant case the defendant entered a general appearance and actually appeared through counsel in the Nevada proceedings. He had an opportunity to litigate the issues, including jurisdiction, though he did not avail himself of that opportunity. *Cf. Isserman v. Isserman*, 11 *N. J.* 106 (1952)..

But the defendant says that under the decision of this court in *Staedler v. Staedler*, 6 *N. J.* 380 (1951), he is not precluded from asserting in this action the invalidity of the Nevada decree. In that case, under facts widely different from those existing here, the defendant wife was not represented by counsel of her own choice and she had no opportunity to make a voluntary decision on the question as to

whether or not she should fully litigate either the jurisdiction of the foreign state or the merits of the case. That litigation was in no sense an adversary proceeding. We held that proceedings are truly adversary only when a defendant is represented by counsel of her own choice and has an opportunity to voluntarily decide whether or not the issues should be fully litigated. We said "That then and then alone can the judgment of the (foreign) court be *res adjudicata* and the full faith and credit clause operate for the advancement of justice rather than for the perpetration of a fraud."

There is a further compelling reason why this defendant should not be heard to assail the Nevada decree—the principle of estoppel. Less than six weeks after that decree was granted he, on the strength of it, remarried and has since continuously cohabitated with his second wife. He was willing to take the fruits of that decree but not to pay the price; he was satisfied with it as long as it suited his purposes but when he tired of making the alimony payments set up in his voluntary agreement which was incorporated in the decree, he attempted to attack it.

It is offensive to common decency for one who voluntarily appeared as a party to an action for divorce and raised no objection to the disposition of the case and subsequently remarries in reliance upon the decree, to thereafter attempt to have it declared void for lack of jurisdiction, the result of which would be to make himself a bigamist, to bring contumely and disgrace upon the woman he has married, and if children were born of the union, to establish possible illegitimacy, *Hooker v. Hooker*, 130 *Conn.* 41, 32 *A.* 2d 68 (1943). Marriage is a public institution of universal concern. The public, the State, is a party to every matrimonial action, and the public policy of the State is to preserve the sanctity and the continuance of the marital state. If a party to a valid divorce granted in another state remarries in reliance thereon the public policy of this State would be violated if the second marriage was vitiated. The bar of estoppel is raised by reason of the connivance in procuring in seeming

good faith what is later alleged to be a fraudulent divorce. Remarriage of a party with knowledge of the fact estops the party entering into it from denying the validity of the previous divorce. *Parmalee v. Hutchins,* 238 *Mass.* 561, 131 *N. E.* 443 (*Mass.* 1921); 1 *Beale, Conflict of Laws* 479.

While this specific question has not been passed upon by the courts of this State, the doctrine has been approved in such cases as *Nichols v. Nichols,* 25 *N. J. Eq.* 60 (*Ch.* 1874); *Hedges v. Hedges,* 112 *N. J. Eq.* 111 (*Ch.* 1932); *Sleeper v. Sleeper,* 129 *N. J. Eq.* 94, 99 (*E. & A.* 1940). The decision of the former Court of Chancery in *Hollingshead v. Hollingshead,* 91 *N. J. Eq.* 261 (*Ch.* 1920), is not to the contrary. There the wife had secured a Nevada divorce which provided for a lump sum payment in cash as alimony. The husband subsequently remarried and she lost part of the alimony in an investment. She later filed a petition for divorce in this State praying that, upon her returning the balance of the alimony payment, her former husband be ordered to support her as his wife, alleging that the Nevada court was without jurisdiction in entering its decree. The wife prevailed only after it was found as a fact that the husband caused her to act in Nevada against her wishes, and as a direct result of his fraud and coercion. In effect, the court found that the acts of the wife in Nevada were in fact those of the husband. The opinion expressly stated that in the absence of such fraud and coercion on the part of the husband, it might well be that either colluding party should be denied relief as being *in pari delicto.*

Judgment affirmed.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.