GENEVIEVE T. WOODHOUSE, PLAINTIFF-APPELLANT, v.
RICHARD P. WOODHOUSE, DEFENDANT-RESPONDENT.

Argued January 10, 1955—Decided February 14, 1955.

410

*Mr. Charles H. Roemer* argued the cause for the appellant (*Mr. Manuel Korn* on the brief).

*Mr. John J. Connell* argued the cause for the respondent.

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal in a matrimonial action from a judgment of the Appellate Division which affirmed a judgment of the Superior Court, Chancery Division, which had dismissed the appellant's complaint on the ground of lack of jurisdiction of the subject matter. The appeal was certified by this court pursuant to *R. R.* 1:10–2(*d*)(*e*).

The complaint invoked the jurisdiction of the Superior Court, Chancery Division, in reliance on *N. J. S.* 2*A*:34–23, which provides as follows:

"Alimony; maintenance; custody and maintenance of children; security; failure to obey order; sequestration; receiver; modification of orders

Pending any matrimonial action *brought in this state or elsewhere,* or after judgment of divorce or maintenance, *whether obtained in this state or elsewhere,* the court may make such order as to the alimony or maintenance of the wife, and also as to the care, custody, education and maintenance of the children, or any of them, *as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of*

*such orders.* Upon neglect or refusal to give such reasonable security, as shall be required, or upon default in complying with any such order, the court may award and issue process for the immediate sequestration of the personal estate, and the rents and profits of the real estate of the party so charged, and appoint a receiver thereof, and cause such personal estate and the rents and profits of such real estate, or so much thereof as shall be necessary, to be applied toward such alimony and maintenance as to the said court shall from time to time seem reasonable and just; *or the performance of the said orders may be enforced by other ways according to the practice of the court. Orders so made may be revised and altered by the court from time to time* as circumstances may require." (Italics supplied.)

In so invoking the jurisdiction the plaintiff-appellant sought to enforce the provisions relating to alimony and support contained in a decree of divorce *a vinculo* obtained by her in the Second Judicial District Court of Washoe County, State of Nevada, on the ground of extreme cruelty, and entered on March 26, 1948. A separation agreement which had been voluntarily entered into between the parties prior thereto on February 4, 1948, in New York, New York, was, in the words of the decree, "adopted, ratified and approved and made a part of this [the] decree by reference thereto." The Nevada proceeding was a full adversary proceeding in which the defendant-respondent filed an answer, appeared through his own counsel and fully contested the action.

As is usual in this type of case the parties availed themselves of the Nevada jurisdiction by meeting the requirements of that state as to residence and submitted proofs to satisfactorily create a legal fiction of domicile. Then following the usual flight pattern of such migrants they almost immediately left the State of Nevada. The respondent returned East and on May 6, 1948 re-married in Yardley, Pa., and lived there until May 1951, when he took up residence in Stockton, N. J., where he now lives with his second wife.

The respondent complied with the terms of the decree relative to alimony until March 1950, when he reduced the payments without the consent of the appellant and later, on or about June 22, 1951, he entirely stopped the payments. Since 1950 he has resolutely and without scruple ignored these provisions of the Nevada judgment and with diligence

and ingenuity has resisted the enforcement of his obligations under the decree in actions brought in this State.

In the first action the wife sued at law for the past due installments accrued under the Nevada decree. To this action the respondent set up six separate defenses: (1) the alimony agreement was void as against public policy; (2) that it acquired no validity from its inclusion in the Nevada decree; (3) that the divorce decree is void as having been made without jurisdiction of the subject matter; (4) or of the parties; (5) was a fraud upon the courts of Nevada and New Jersey; and (6) the decree being void it could not serve as a basis upon which an action could be based in this State.

In that action the Appellate Division affirmed a judgment in favor of the wife, 20 *N. J. Super.* 229 (*App. Div.* 1952), which judgment was affirmed by this court in 11 *N. J.* 225 (1953), where we held that since the respondent had entered a general appearance and actually appeared through counsel in the Nevada proceeding, such decree was entitled under the Federal Constitution to full faith and credit in the courts of this State, citing the cases in 11 *N. J.*, at *page* 228 of the opinion. And we stated it was offensive to common decency for one who voluntarily appeared as a party to an action for divorce and raised no objection to the disposition of the case and subsequently re-married in reliance upon the decree, to thereafter attempt to have it declared void for lack of jurisdiction.

On remand a final judgment was entered in the case establishing the arrears due and owing at $8,047.63. The respondent immediately attacked this judgment on the grounds that under the terms of the separation agreement he was entitled to credit for "any income from any source whatsoever other than from the first party hereto." The trial court construed the agreement that wages earned by the plaintiff and made necessary for her support by his delinquency, were not to be construed "as income" within the import of the decree and the agreement, and on appeal the Appellate Division remanded the cause on the ground that such wages constituted

income within the meaning of the decree and the agreement. 28 *N. J. Super.* 63 (*App. Div.* 1953).

The court granted certification from the Appellate Division, 14 *N. J.* 463 (1954), and we held since the agreement was incorporated in the decree, "The dispute between the parties concerning the amounts of the installments past due, therefore, must be determined upon the contractual plane so solemnified." 15 *N. J.* 550, at *page* 555 (1954). We further held that the provisions of the contract were bilateral in nature and that the respondent's right to enforce the plaintiff's promise to submit to a reduction of the installments under the decree or agreement when she earned income, must give way before the principles of justice that inhibit the enforcement of a promise where the counter-promise has been broken; therefore by his delinquency he was deprived of his right to claim a reduction in past due payments.

The relief sought by the complaint in this case is: (1) that the Superior Court, Chancery Division, exercise its jurisdiction and order the defendant to pay such alimony as the court shall fix; (2) that the defendant be compelled to post security for the payment of such alimony; and (3) that he pay a proper amount of counsel fees and costs and that the plaintiff may have such other relief as the circumstances and her case require.

At the trial on a motion to dismiss the complaint the trial court dismissed it for lack of jurisdiction because, as it stated, there was no reservation in the decree permitting its modification, that it was a final judgment and was protected by the Full Faith and Credit Clause of the Constitution. It reached this conclusion despite the fact that the plaintiff contended she did not seek a modification of the Nevada decree.

On the appeal to the Appellate Division that court concurred in the result below and affirmed the judgment, holding that the courts of New Jersey are precluded from making an independent ascertainment of alimony in a new proceeding based upon its own findings of what is fit, reasonable and just in accordance with the present circumstances of the party and the nature of the case, and it further held that

the statute, *N. J. S.* 2A:34–23, does not specifically give our courts the power to specifically perform the alimony provisions of the Nevada decree regardless of its own findings and therefore the court did not have jurisdiction.

With these conclusions we are not in agreement as they apply to the facts and circumstances in this case.

The appellant has done her utmost to compel the defendant to comply with the divorce decree of the State of Nevada and in this case she is not seeking modification of the Nevada decree which, it seems to be conceded, was not at the time of its entry subject to the reservation as to alimony but rather is seeking the enforcement of the decree. If there is no jurisdiction so to provide, then the former wife is remediless, and this is not a condition of helplessness that the Full Faith and Credit Clause was designed to effect. It would seem that on the plainest principles of justice the respondent should not be permitted to invoke the Full Faith and Credit Clause in support of his non-performance of this agreement, the enforcement of which he made impossible even in the jurisdiction in which it was granted by moving from there and establishing his residence in the State of New Jersey.

The appellant should not be put to the vexation of filing repeated suits at law to recover arrearages due under this foreign decree. Under the principles of comity, which is a rule of convenience and expediency, such a division of jurisdiction would contravene the policy of the principle of comity. *O'Loughlin v. O'Loughlin*, 6 *N. J.* 170 (1951).

As was pointed out in prior decisions, the motivating reasons for the enactment of the statute were to effectuate the public policy of preventing this State from becoming a haven for defendants against whom decrees for support have been entered in foreign jurisdictions and to clear up any doubt with respect to the ability of our courts to grant relief by way of support after a foreign decree, with respect thereto, has been entered. *Conwell v. Conwell*, 3 *N. J.* 266 (1949); *Levy v. Levy*, 17 *N. J. Misc.* 324 (*Ch.* 1939).

The enforcement of the statute of course, is subject to the limitations of the Full Faith and Credit Clause, and a

judgment of a foreign state must be granted full faith and credit in its entirety in this State when such judgment has the requisite finality and is not subject to future modification and it appears from the record that the jurisdictional requirements applicable to both the subject matter and the person were present when the judgment was entered. See the cases cited in *Woodhouse v. Woodhouse*, 11 *N. J.* 225, at *page* 228 (1953); *Robison v. Robison*, 9 *N. J.* 288, 291 (1952). *Cf. L.* 1954, *c.* 187. We are not called upon in this case and do not pass upon the question which would be presented by proof of a material change in the circumstances of the parties following the entry of the final decree in the foreign jurisdiction.

▉ Respondent's claim of lack of jurisdiction is predicated on the last sentence of *N. J. S.* 2A :34–23 which provides: "Orders so made may be revised and altered by the court from time to time as circumstances may require." He argues this provision is fatal to the appellant's cause of action since our courts are without power to modify or amend a final decree that is entitled to full faith and credit under the Federal Constitution. There are two answers to this proposition: first, that the jurisdiction conferred upon the Superior Court is a discretionary, not a mandatory jurisdiction, and the second is that jurisdiction having been exerted the relief to be granted is likewise discretionary and shall be such "as the circumstances of the parties and the nature of the case shall render fit."

▉ Conceding that the statute is open to the construction urged by the respondent, such a construction might render it unconstitutional or permit its unconstitutional application. In such a situation the duty of this court is to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation. *St. John The Baptist, etc., Church v. Gengor*, 121 *N. J. Eq.* 349 (*E. & A.* 1937); *Lynch v. Borough of Edgewater*, 8 *N. J.* 279 (1951).

Thus this statute has been construed as not conferring the power on our courts to modify a decree or judgment for alimony entered in a foreign state where under the law of

that state the past due installments are irrevocable, absolute and vested and are not subject to future modification. This has been our holding in *Conwell v. Conwell, supra; O'Loughlin v. O'Loughlin, supra; Robison v. Robison, supra.*

We likewise held in those same cases that where the decree or judgment for alimony entered in a foreign state is subject to future modification or revision as to past due or future installments, then such judgment or decree lacks the requisite finality to entitle it to full faith and credit in this State. Construing this section in the light of the decided cases, both in the United States Supreme Court and in this court, the legislative intent was and is that the discretionary jurisdiction to be exercised should be confined in the ambit of power defined and limited by the Full Faith and Credit Clause of the Federal Constitution. And we so construe it.

Since it is conceded that the appellant does not seek to change or modify the terms of the Nevada decree and judgment in question, and since it is further conceded that such decree has the requisite finality to entitle it to full faith and credit in this State, the question is, does the statute confer on our court jurisdiction to enforce that decree pursuant to our practice and procedure in accordance with its specific terms?

We hold that it does and that when such relief is sought and granted such action is in aid of the policy behind the Full Faith and Credit Clause and provides a truly effective means of enforcement. See *Goodrich, Conflict of Laws* (1949), *p.* 603 *et seq.; Corwin, Constitution of the United States* (1953), *p.* 651 *et seq.* The principles of comity likewise would seem to require where this State can aid the enforcement of a final judgment of another state by obtaining *in personam* jurisdiction of the defendant where necessary, it should do so. Unity and uniformity are favored so that a husband cannot escape his responsibility by crossing state borders. See *Conwell v. Conwell, supra.* State lines do not and should not make court barriers. *Gasteiger v. Gasteiger,* 5 *N. J. Misc.* 315 (*Ch.* 1927).

A statutory expression of these principles is found in our Uniform Reciprocal Support Act, *N. J. S.* 2*A*:4–30.1 *et seq.*, as amended *L.* 1953, *c.* 245, a counterpart of which statute has been enacted by many of the states of the Federal Union.

The respondent and the courts below relied on *Robison v. Robison, supra; Roskein v. Roskein,* 25 *N. J. Super.* 415 (*Ch.* 1953) and *Miele v. Miele,* 25 *N. J. Super.* 220 (*Ch.* 1953), but these cases are clearly distinguishable. In the *Robison* case it was held the foreign judgment was not subject to modification as to past due installments because such installments were vested and could not be modified in the state in which the judgment was entered, but we held there was jurisdiction with respect to future installments since the law of such state permitted such modification.

In both the *Roskein* and *Miele* cases the foreign judgment as to alimony was not subject to modification in the state in which the award or judgment was entered and the husband in each case had fully complied with such provisions of the award, and therefore it was held that our courts will not modify such an award so as to give the wife additional relief which is not available to her in the foreign state in which the award was granted.

The judgment of the Appellate Division is reversed and the cause remanded to be proceeded with, under the statute *N. J. S.* 2*A*:34–23, in accordance with the practice and procedure of the court, in a manner consistent with the views expressed in this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.