39 N.J. Super. 24 (1956)
120 A.2d 270
HELENE D. RAYMOND, PLAINTIFF,
v.
CHESTER A. RAYMOND, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 25, 1956.
*27 Mr. Purvis Brearley, attorney for plaintiff.
Messrs. Smith, Stratton & Wise and Messrs. Stark and Stark (Mr. Sidney S. Stark), attorneys for defendant.
CONFORD, J.S.C.
This is an action for divorce on the ground of desertion. The parties were married in 1921 and are now in their late 50's. The contest is over the provision for permanent alimony to be awarded the plaintiff. So far as concerns the cause of action for desertion my careful scrutiny of the proofs satisfies me that defendant did desert the plaintiff in July 1953 and has continued to do so willfully, continuously and obstinately ever since. Judgment nisi will be granted. A 20-year-old son of the parties lives separately, maintaining himself partly by his own efforts and partly through financial assistance by his father. Prior to the separation the parties resided together in a ten-room, three-bath house on a fine residential street in Princeton. They purchased it in 1948 for $32,500 and sold it in 1954 (see infra) for $46,250. Plaintiff was given $200 a week by defendant to run the household and buy herself clothing. The boy attended private school for a time. They lived and vacationed comfortably. She did her own housework, however, except for the services of a one-day-a-week maid. Shortly before the separation her allowance was reduced to $100. He maintains $54,000 in life insurance at an annual premium cost of $3,457.
Defendant is in business for himself as a rebuilder of and dealer in rebuilt pipe-organs. His income tax returns show net income from business as follows: 1950  $11,924; 1951  $18,779; 1952  $8,887; 1953  $8,303; 1954  $14,867. A rough estimate by his accountant of his 1955 business income is $4,711. Defendant concedes that figure may be distorted because of a recent change of his accounting basis from cash to accrual. Moreover, his son Bruce is on the payroll at $3,000 per annum and defendant concedes he does not earn it. Defendant had capital gains of $5,500 in 1950, $3,997 in 1953 and $906 in 1954. He recently *28 borrowed $17,000 from a bank for the avowed purpose of making further capital gains in the stock-market to increase his income. His current net worth is approximately $34,500, mostly in business assets.
When defendant left his wife he took a $70 per month room (including breakfast) at the Nassau Club in Princeton, where he still lives. His only apparent luxuries are a woman companion (over whom he left his wife) for dinner several times a week and a personal four-seat airplane. He claims to need the plane for business and its maintenance and depreciation are listed as business expenses for tax purposes. My opinion from the evidence is that it is more of a sport and luxury than a business necessity. After the house was sold in 1954 plaintiff took a $69-per-month apartment consisting of one room and a bath. In June 1955 she obtained a position as a salesperson at a place where her earnings are $125 per month in salary and an average of $10 per week in commissions. She also receives almost all of her meals gratis on the job. She testified she is saving the entirety of her earnings "for her old age" and is subsisting entirely on the sum of $75 weekly which her husband has been paying her pursuant to the support and property agreement described infra.
On April 13, 1954 the parties entered into a formal written agreement disposing of their property and providing for support of the wife. In substance, they agreed: (a) to sell the home for $46,250, pay off from the proceeds a $14,000 mortgage, some $21,000 in personal and business debts of the defendant and miscellaneous other items, and to divide the net remainder equally, tax-free to the wife; (b) that all the house furnishings should go to the wife; (c) that the husband should pay $75 minimum weekly as support to the wife together with, at the end of each calendar year, one-third of the excess over the sum of $11,700 of the net income of the husband for the year as computed for federal income tax purposes, but not to exceed, in total, the aggregate equivalent of $150 per week; (d) that the husband should maintain life insurance irrevocably payable to the wife *29 in the principal amount of $25,000 and transmit to the wife proof of annual payment of the premiums therefor. The parties further agreed that the agreement should, with the approval of the court, be incorporated in any decree or judgment of divorce or separation affecting the parties and that it should be binding and survive any such judgment.
The provisions concerning sale of the house were executed and plaintiff's share of the net proceeds was $3,951. Plaintiff now has $6,500 in liquid assets and some antique furniture of indeterminate value.
The complaint here asks, in addition to a divorce: (a) future support in accordance with the agreement; (b) judgment for $1,358.11, representing one-third of the excess of defendant's 1954 net income over the sum of $11,700, as called for by the agreement; and (c) judgment directing defendant to furnish proof of payment of premiums on the insurance. At the hearing plaintiff broadened her demands to include: (a) an additional $24 weekly to raise her standard of living to what it was when living with defendant; and (b) such sum as will equal the federal income tax she will have to pay on the payments she receives pursuant to the judgment of the court (defendant will have a tax deduction for such payments), there having concededly been no such tax liability upon her nor credit to the defendant as of the time and under the circumstances obtaining when the agreement was made. It is thus observable that plaintiff wants judgment for everything that the agreement gives her and more besides. Defendant asks the court to disregard the agreement entirely, first, for the reason that he was allegedly coerced into entering into it, and second, on the ground that his present circumstances would make the undertaking unduly burdensome. He is willing to pay her $60 per week as support and to continue to maintain $25,000 in life insurance, payable to plaintiff, at an annual premium cost of $1,115.48.
The general principles applicable in fixing alimony pursuant to N.J.S. 2A:34-23 have been so fully stated recently by Judge Goldmann in Turi v. Turi, 34 N.J. *30 Super. 313 (App. Div. 1955), and in Mowery v. Mowery, 38 N.J. Super. 92 (App. Div. 1955), as to require no extended discussion in the present context. The cases teach us that defendant's reasonable capacity to earn as well as his actual earnings; his total estate; the style in which the parties were accustomed to live; and plaintiff's own property and income, are all to be taken into account. The agreement made by the parties is evidence of what they deemed appropriate provision for the support of the wife after the destruction of their joint household and may be given consideration and effect by the court to the extent only that it is regarded as just and represents the fair and equitable measure of that obligation. Lum v. Lum, 140 N.J. Eq. 137 (E. & A. 1947); Woodhouse v. Woodhouse, 20 N.J. Super. 229, 233 (App. Div. 1952), affirmed 11 N.J. 225 (1953). Such agreements will not be specifically enforced, at least to the extent that doing so would impair the unlimited statutory jurisdiction and obligation of the court to control the amount of alimony or support of a wife on a continuing basis, either prior or subsequent to a judgment of divorce. Numerous decisions to that effect follow the leading case of Apfelbaum v. Apfelbaum, 111 N.J. Eq. 529 (E. & A. 1932); Harrington v. Harrington, 142 N.J. Eq. 684 (E. & A. 1948), and cases therein cited. See Peff v. Peff, 2 N.J. 513, 526 (1949).
The matter of insurance may be quickly disposed of. An undertaking by a husband to maintain insurance on his life payable to his wife is not an agreement for her support during his lifetime and the agreement here involved will not be accepted as evidential of the extent of defendant's obligation to support plaintiff, as that obligation expires with his life. Modell v. Modell, 23 N.J. Super. 60, 62 (App. Div. 1952). But the instant contract stipulation in that regard was not purportedly made in performance of the duty to support but as one of a number of property stipulations between the parties integrated for convenience with the support agreement. Others of these called for discharge of certain purely personal and business debts of the *31 defendant out of the proceeds of sale of the jointly owned home of the parties. The provision for insurance was not repudiated by the defendant in his pleadings or at the hearing. The insurance is presently in force. I am of the view that the stipulation ought to be enforced in equity as part of what seems to me a fair and equitable property settlement by the parties in other respects fully executed to the considerable benefit of the husband. While contracts between husband and wife are void at law they are enforceable in equity to the extent that they are fair and just. Fike v. Fike, 3 N.J. Misc. 485 (Ch. 1925), affirmed 99 N.J. Eq. 424 (E. & A. 1926). See Van Inwegen v. Van Inwegen, 4 N.J. 46 (1950); Bendler v. Bendler, 3 N.J. 161 (1949). The judgment will direct defendant to provide plaintiff with proof of payment of premiums, now and hereafter.
The proofs do not persuade me that the present economic situation of the parties is materially different from what was contemplated when they made the support agreement in 1954, save only to the extent of plaintiff's income from her employment. There is no proof whatever of the duress charged by defendant. I discount the evidence as to defendant's low 1955 income for reasons already stated. While plaintiff's personal income is, under the cases cited above, an appropriate factor for consideration, it is substantially neutralized by the changed situation as to income taxes now existing, favorable to defendant, unfavorable to plaintiff. See Munger v. Munger, 21 N.J. Super. 49 (Ch. Div. 1952).
I consider the agreement for a sliding scale of support geared to defendant's income as both just and peculiarly suited to the wide annual variations in defendant's income which undoubtedly inspired the parties' agreement upon it. Notwithstanding that it is unusual in nature, I adopt it as fair and equitable and will order it to become effective as of the date of this opinion. Accordingly, defendant's prospective obligation by way of support to plaintiff will be $75 per week, increased by one-third of the excess *32 of defendant's annual income as determined for income tax purposes over the sum of $11,700, not to exceed, however, an aggregate for any year at the rate of $150 per week. Plaintiff will pay her own income taxes.
The request for judgment for the assertedly accrued obligation of $1,358.11 must be denied. To grant it would, in effect, be to award alimony retroactively. This is contrary to settled principles. Herman v. Herman, 17 N.J. Misc. 127 (Ch. 1939). Looked at in another aspect it would be to enforce performance of an agreement for support or alimony to the extent of arrearages accrued thereunder, notwithstanding the absence of a court order for alimony, contrary to such authorities as Aiosa v. Aiosa, 119 N.J. Eq. 385 (E. & A. 1936) and Phillips v. Phillips, 119 N.J. Eq. 462 (E. & A. 1936). Distinguish the situation presented where the arrearages stem from an agreement previously incorporated in a judgment. Woodhouse v. Woodhouse, supra.
Judgment nisi for plaintiff in accordance with the foregoing. Submit judgment on notice or by consent.