In re ESTATE of Howard Lee DAVIS, Deceased.

Ione Davis JONES, Executrix, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 18192.

United States Court of Appeals, Third Circuit.

Argued Sept. 22, 1970.

Decided March 23, 1971.

Martin D. Cohen, Cohen, Rosenbaum & Scher, Newark, N. J., for appellant.

Kenneth L. Gross, Dept. of Justice-Tax Division, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, and William Massar, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before HASTIE, Chief Judge, and FREEDMAN * and ADAMS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

The matter in dispute on this appeal from a decision of the Tax Court[1] is a determination of an estate tax deficiency that resulted from including in the estate an inter-vivos trust that the decedent had established primarily for the benefit of his estranged wife, who survived him. For the estate, the decedent's executrix, who is also his daughter, concedes that the settlor had retained until the time of his death such shared control over the trust as normally

would have caused the trusted property to be taxable as part of his estate, as the gross estate is defined in sections 2036 and 2038 of the Internal Revenue Code. However, she contends that particular provisions of those sections that exclude from the taxable estate property transferred for "adequate and full consideration in money or money's worth" apply here and make the Tax Court's decision erroneous.[2]

The decedent was a graduate engineer who from January 1, 1926 until his retirement at age 61 on December 31, 1938, served as Director of Technical Employment and Training for New York Telephone Co. During that period his annual salary ranged from $9,000 to $11,000. He also received small royalty income from two publications. From his retirement until his death on May 9, 1963, he received a pension that varied slightly between $318 and $314 per month. From 1938 to 1947 he earned income between $5,000 and $6,000 per year as a teacher.

The decedent married his wife Ione in 1902 and they had three daughters. He provided a well appointed home of thirteen rooms and four baths for his family in a good neighborhood and generally provided well for his wife. He employed domestic help and made it pos-

---

* Judge Freedman heard the argument and participated in the consideration of this appeal but died before it was decided.

1. Estate of Howard Lee Davis, 1968, 51 T.C. 269.

2. § 2036 "(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

  " * * *

  "(2) the right, either alone or in conjunction with any person, to designate

the persons who shall possess or enjoy the property or the income therefrom." 26 U.S.C. § 2036.

§ 2038 "(a) In general.—The value of the gross estate shall include the value of all property—

  " * * *

  "(2) Transfers on or before June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death." 26 U.S.C. § 2038.

sible for his family to enjoy various luxuries.

During the 1930s marital difficulties arose and, in contemplation of divorce, the spouses separated and sold their home. On April 13, 1936, when the decedent was 58 years of age, his wife 54, and all daughters were over 25, the spouses executed two documents, one entitled "Articles of Separation" and the other, "Deed of Trust."

In the separation agreement the husband undertook to pay the wife $170 monthly for her support. In the trust he conveyed securities, valued at $26,307.38 at the date of transfer, to a trustee, directing that the entire net income, as well as so much of the corpus as he might direct or, after his death, the daughters might agree, be paid to the wife for life and thereafter the net income to a daughter Alma, whose health had become impaired, for her life. Power to terminate the trust was reserved to husband and wife jointly so long as both should live.

The trust was to terminate upon the death of the survivor of the spouses. The corpus was then to be paid to any surviving daughter or daughters and the issue of any deceased daughter or daughters, *per stirpes*. And finally, the settlor reserved the right to modify the trust, provided the life interests of his wife and Alma were not altered.

Husband and wife were domiciled in New Jersey when the trust was created, and the instrument provided that it was in all respects to be governed by New Jersey law.

The Tax Court found, and it is not now disputed, that the "separation agreement and trust were integrated parts of a larger agreement between decedent and Ione * * * the purpose and effect of which was to settle out of court * * * the provisions decedent was to make for Ione's support. The trust created for Ione, as well as the $170 monthly payments under the separation agreement, were in consideration of her relinquishing her right of support." 51 T.C. at 274. Therefore, for a determination whether all or any part of the property placed in trust came within the nontaxable category of property transferred "for an adequate and full consideration in money or money's worth," the court found it necessary to value the right of support that Ione surrendered in consideration of benefits under the trust and the separation agreement.[3]

To that end, the Tax Court, sitting in 1968, undertook to assign dollar value to Ione's right of support as it existed in 1936 under New Jersey law. There was some evidence of family discussions before the trust was executed in which Ione's minimum requirements were estimated as at least $300 per month. One daughter testified that "the summation of them [family discussions] was that it [the wife's support] would have to be at least $300 per month." She added: "* * * and we really thought, the three of us, she needed more." A second daughter testified that her mother "couldn't have lived on less than $300 per month." An expert called by the taxpayer testified as to the factors a New Jersey court would have considered in translating the right to support into dollars and concluded that in the light of the husband's income and assets, the family history and station, and all related circumstances, a New Jersey court would have awarded Ione not less than $100 per week.[4] Upon the basis of this evidence, the Tax Court stated in its findings of fact that the "family, including decedent, decided that Ione should have $300 per month for her support."

3. *Cf.* Commissioner of Internal Revenue v. Nelson, 2d Cir. 1968, 396 F.2d 519.

4. The Tax Court incorrectly equated this sum with $400 per month rather than $434. The $400 figure appears only in a question asked by counsel whether a New Jersey court would have held a $400 allowance excessive.

And in its opinion the court characterized this amount as "reasonable" and added that "the agreement reached by the parties * * * more accurately reflects the value of Ione's support rights than * * * the expert testimony offered by petitioner as to what the New Jersey courts would have awarded Ione had she litigated the matter." The court then concluded that $300 per month for the life of the wife represented the dollar value of her legal right to support, of which $130 was the consideration for the establishment of the trust, the difference being supplied by the separation agreement. In addition, it found that in 1936 the commuted value of the wife's right to $130 per month for life was $17,150.35 as contrasted with the $26,307.38 that the husband transferred in trust. A determination of the tax consequences of these disparate values involved troublesome problems of estate taxation to which the Tax Court addressed itself,[5] but which we find it unnecessary to consider.

In our view, the valuation of the right of support as $300 per month is not warranted by the evidence. The testimony of the daughters disclosed no more than a family consensus that the wife could not live on less than $300 per month. There is nothing in the record to show that the decedent had provided merely a minimum subsistence for his wife or that a court would so restrict her right

of support. The record shows a family living very well and comfortably.[6] The husband's annual salary was $11,000 and he had significant accumulations, which were used to provide the $26,000 corpus of the trust now in question. He had small earnings in unspecified amounts from royalties. These circumstances suggest ability and responsibility to contribute substantially more than $300 monthly for support of the wife in a situation where there were no minor children. The conclusion of the expert witness that a New Jersey court would have awarded the wife at least $100 per week was supported by an elaboration of the expert's reasoning and was not refuted by any other witness. In these circumstances, we can find no rational basis for valuing the support right as low as $300 per month.

We recognize, as does the dissenting opinion of Judge Hoyt in the Tax Court, that it is impossible, 30 years after the time in question, to make an exact retrospective valuation of the wife's intangible legal right of support as a court would have determined it in 1936. In the nature of the case, the evidence on this issue could not be very satisfactory. However, if the family had agreed that $300 per month would be adequate, that might well have sufficed to support the Tax Court's finding. But the testimony, that the wife could not live on less than $300 and in fact needed more, was at

5. Difficult problems of statutory interpretation, valuation of powers and other interests, and at times harsh results, enter the picture when it is necessary to apply section 2043 of the Internal Revenue Code which controls the taxation of property transferred so that various interests are created for consideration less than full and adequate.

6. Particularly illuminating are the following findings of fact made by the Tax Court:
"Decedent and Ione maintained a high standard of living during their marriage. In 1910, they purchased in Ione's name a 13-room, one-family residence in Montclair, N. J., in which they resided until it was sold on March 31, 1936. The house had four bathrooms, three porches. and a large cellar, in addition to its 13 rooms, and was located in a good residential neighborhood. The grounds included a garden and grape arbor. Decedent always employed full-time domestic help, as well as a part-time laundress. From time to time decedent also engaged governesses for his daughters.

"Each of decedent's daughters received a college education, the costs of which were paid by decedent. Decedent also paid the costs of educating a nephew at Yale University. As graduation presents, decedent gave each daughter an extended European vacation." 51 T.C. at 271.

best evidence that the value of the right was something more than $300, particularly when the husband's economic situation and his record as a provider are considered. Moreover, since $300 was only an estimated minimum of subsistence needs, that estimate provides no basis for disparaging the only expert testimony on the issue to the effect that a New Jersey court would have valued the support right at not less than $100 per week. The expert properly considered that the husband's income in 1936 from salary, securities and royalties was more than $12,000. And, although he made passing reference to a judicial "rule of thumb * * * to give the wife at least a third of her husband's income," he emphasized that the courts attempt to reach an equitable result in all of the circumstances of a given case.[7]

Sitting as a trial court we might well have been disposed to accept the expert's minimum estimate as a reasonable figure meriting adoption for present purposes. However, since the Tax Court valued the right to support at only $300 per month our legitimate concern as a reviewing court is to do no more than determine how conservative a valuation the evidence permits. We hold that a sum about midway between the family estimate of minimum subsistence needs and the expert estimate of minimum judicial allowance is as low an estimate of the value of the right of support as can reasonably be made on the present record. Accordingly, we hold that at least $370 per month, rather than $300, should be the basis upon which the value of the relinquished right of support is calculated.

Since $170 per month was provided by the separation agreement, the discharge of the husband's obligation to pay the remaining $200 per month (rather than $130 as found by the Tax Court) was the consideration received by him for establishing the trust.

Determined by the Tax Court's method of computation, the cost in 1936 of an annuity that would have paid the wife $200 per month for life would have been $26,385.15.[8] This compares with the Tax Court's finding that the value of the property transferred in trust was $26,307.38. Thus, in 1936 the husband transferred property worth about $26,300 in trust in return for the release from an unliquidated obligation of approximately equal value.

We again emphasize that precise valuation of the wife's right to support as it existed in 1936 is impossible. But we think and hold that the present record requires the conclusion that the dollar value in 1936 of the trusted property and of the wife's right of support, which the Tax Court found to have been relinquished in consideration of the creation of the trust, were substantially equal. Certainly, no such disparity appears between the trusted property and the released unliquidated obligation as would prevent one from being full and adequate consideration for the other.

The decision of the Tax Court will be reversed and the cause remanded for appropriate disposition in recognition of that substantial equivalence.

7. For an illuminating discussion of the way the New Jersey courts approached this problem during the 1930s see O'Neill v. O'Neill, Ch.1939, 18 N.J.Misc. 82, 92–94, 11 A.2d 128, 134, aff'd, 127 N.J.Eq. 278, 12 A.2d 839. See also the more recent discussion in Raymond v. Raymond, Ch.1956, 39 N.J.Super. 24, 120 A.2d 270.

8. The Tax Court's computation showed that an annuity to provide the wife with $130 per month would have cost $17,150.35. We use $20/13$ of that as the cost of an annuity to provide $200.