MARTHA P. PIERCE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JOHN R. AND ELLEN R. PIERCE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1519-74, 1655-74.    Filed August 9, 1976.

Martha P. Pierce, pro se in docket No. 1519-74.
*John P. Breen,* for the petitioners in docket No. 1655-74.
*Gerald J. O'Toole,* for the respondent.

FORRESTER, *Judge:* In these consolidated cases, respondent has determined the following deficiencies:

| Docket No. | Taxable year | Deficiency |
|---|---|---|
| 1519-74 _____ | 1966 | $6,380.11 |
| | 1967 | 120.00 |
| 1655-74 _____ | 1966 | 10,705.47 |
| | 1967 | 931.39 |

The two issues presented for our decision are as follows:

(1) Whether an amount of $20,000, which a New Jersey State court ordered John Pierce to pay Martha Pierce as "accumulated alimony," is includable in Martha Pierce's 1966 gross income under section 71[1] and deductible by John Pierce under section 215; and

(2) Whether John or Martha Pierce is entitled to a claimed dependency exemption for 1966 and 1967.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner Martha Pierce (Martha) filed her individual Federal income tax returns for 1966 and 1967 with the District Director, Newark, N. J. She resided in Berkeley Heights, N. J., at the time her petition herein was filed.

Petitioners John and Ellen Pierce[2] (John) are husband and wife and filed joint Federal income tax returns for the years at issue with the District Director, Newark, N. J. At the time they filed their petition herein, they resided in Pasadena, Calif.

John and Martha were married on November 5, 1938. In August 1961 they ceased living together, and on March 31, 1964, Martha was granted an absolute divorce by a Nevada State court. Because the Nevada decree did not award her any alimony or child support, on June 8, 1964, Martha brought an action in the Superior Court of New Jersey, Chancery Division, seeking, inter alia, suitable alimony for herself and child support payments for her daughter Elizabeth.

On May 24, 1966, almost 2 years after Martha filed this action in the New Jersey court, that court entered an order (hereinafter

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

[2] Petitioner Ellen Pierce is a party to the instant case solely as a cosigner of a joint return with her husband, John Pierce. Hereinafter, we will refer to John Pierce as the petitioner in this docket number.

referred to as the May 24 order) which, in pertinent part, stated as follows:

And the Court having heard the proofs and considered the arguments of counsel, and having considered the offer of settlement proposed between the parties; and it further appearing that the action is for permanent alimony following a judgment for divorce granted to the plaintiff in an action brought in the Second Judicial District Court of the State of Nevada, a court of competent jurisdiction, and no alimony having been granted to the plaintiff in that action by the aforementioned Nevada court;

It is thereupon, on this 24th day of May, 1966, ORDERED and ADJUDGED that the defendant pay to the plaintiff the sum of $200.00 per week beginning on the first Monday following the date hereof until the further order of this Court; and

IT IS FURTHER ORDERED in addition thereto that the defendant pay to the plaintiff the sum of $150.00 per month, commencing with the first day of the first month following the entry of this Order, as and for the support and maintenance of Elizabeth Ann Pierce, a child born of the marriage between the parties aforesaid; and

IT IS FURTHER ORDERED that the plaintiff pay to the defendant the sum of $20,000.00, being defendant's proper share of the securities standing in the joint names of the parties, appropriated by the wife and converted by her to her own use; and

IT IS FURTHER ORDERED that the defendant convey to the plaintiff all his right, title and interest in and to the real estate commonly known as 275 McMane Avenue, Berkeley Heights, Union County, New Jersey, by Bargain and Sale deed; and

IT IS FURTHER ORDERED that the defendant pay to the plaintiff the sum of $20,000.00 as accumulated alimony for that period commencing with the date of the filing of this action to the effective date of the first payment of alimony as provided for hereinabove; and

IT IS FURTHER ORDERED that defendant assign to the plaintiff * * * all his right, title and interest in and to the following policies of insurance * * *

IT IS FURTHER PROVIDED that the parties hereto, subject to the terms and conditions of the within Order, shall exchange between them mutual releases, each releasing the other of all claims and demands whatsoever in law or in equity made * * *

Between the date of their separation and the entry of the Nevada decree, Martha received occasional support payments from John. After the divorce, however, John made few or no support payments until required to do so by the above order.

John and Martha jointly owned certain shares of stock and, in January 1962, Martha transferred ownership in these shares into her own name.[3] It was because of this alleged conversion of

---

[3] She made this transfer pursuant to a power of attorney her husband had given her some years earlier.

John's interest in the stock that the New Jersey court included in its order the requirement that Martha pay John $20,000.

After the entry of the May 24 order, John was of the belief that the $20,000 amounts that he and Martha were required to exchange simply offset each other and that nothing further was required of him. At the time of the trial of this case, neither John nor Martha had ever paid to the other $20,000 as required by that order.

On his 1966 return, John claimed a $6,200 deduction for alimony payments made in that year as well as a deduction of $20,000 for "back alimony payments." On her 1966 return, Martha reported only $6,000 as income representing alimony payments received from John.[4] Respondent has taken inconsistent positions in these cases by disallowing John's $20,000 deduction for "back alimony payments" and by including $20,000 in Martha's 1966 gross income.

As previously stated, following the entry of the May 24 order, John was of the opinion that the $20,000 sums offset each other. However, in December 1969, he discovered that respondent would not treat this offset as deductible alimony. In order to protect his interests, he filed a motion in the Superior Court of New Jersey, Chancery Division, to hold Martha in contempt for failure to pay to him the $20,000 as required by the May 24 order.

In an opinion decided on July 1, 1971, the New Jersey court deleted that part of the order which required John to pay Martha $20,000 as "accumulated alimony," but upheld the part requiring Martha to pay John $20,000 for conversion of the stock. In its opinion, the court stated, in part, as follows:

> The law seems to be quite clear that alimony in New Jersey is created by statute and that where there is not an initial order granting alimony there can be no retroactive allowance for alimony. Plaintiff's own counsel has submitted authority which supports this statement of the law and indeed it is plaintiff's present position that the award of alimony in the order of May 24, 1966 was improper for the reason that it was a retroactive allowance. It is significant at this point to note that during the pendency of the action which culminated in the order of May 24, 1966 no procedure was initiated to obtain for the plaintiff pendente lite support or other relief.

---

[4] Martha has conceded that she actually received $6,200 in alimony payments from John in 1966.

Martha appealed this decision to the Superior Court of New Jersey, Appellate Division. In an opinion dated November 17, 1972, this court reversed the lower court and reinstated the May 24 order, stating in part as follows:

> We are satisfied that the order modifying the judgment must be vacated. The judgment entered on May 24, 1966 superseded any agreements made between the parties either on or off the record; it was consented to by both parties and is binding upon them. Neither party appealed therefrom. It is conceded that the judgment was not the product of fraud or misrepresentation. At best it is arguable that it was based on a mistaken understanding of its terms and effect.

Two children were born of the marriage of John and Martha— John Jeremy Pierce and Elizabeth Pierce, both of whom were born on February 21, 1945. Both John and Martha claimed Elizabeth as a dependent on their respective 1966 and 1967 returns. Respondent disallowed both petitioners this claimed dependency exemption and takes a neutral position as to which one should be allowed the exemption for Elizabeth.

In compliance with the May 24 order, John made the following payments to Martha for Elizabeth's support:

| Year | Payments | |
|------|----------|---|
| 1966 | $1,050 | ($150 per month × 7 months) |
| 1967 | 1,800 | (150 per month × 12 months) |

During the years at issue, John made no other payments toward Elizabeth's support.

During 1966 and 1967, Martha resided in the house in Berkeley Heights with her son, Jeremy, and her daughter, Elizabeth, although only Elizabeth was claimed as a dependent on Martha's returns for those years. From an itemized summary of expenses prepared by Martha at the close of 1966 and 1967, we find that she incurred, inter alia, the following expenses during those years:

| | *1966* | | |
|---|---|---|---|
| | | Portion | Expense |
| | Total | allocable | allocable |
| Expense | amount | to Elizabeth [5] | to Elizabeth |
| Utilities | $573.53 | ⅓ | $191.18 |
| Clothing | 1,419.90 | ⅓ | 473.30 |
| Food | 1,459.56 | ½ | 729.78 |
| Laundry | 223.30 | ⅓ | 74.43 |
| Medical | 117.00 | all | 117.00 |
| Total | | | 1,585.69 |

---

[5] Martha allocated one-half rather than one-third of the food expense to Elizabeth because Jeremy did not eat his meals at home.

| | *1967* | | |
|---|---|---|---|
| Utilities | 1,087.42 | ⅓ | 362.47 |
| Clothing | 1,083.71 | ⅓ | 361.24 |
| Food (estimate, at $30 per week) | 1,500.00 | ½ | 750.00 |
| Laundry | 150.88 | ⅓ | 50.29 |
| Medical | 61.50 | all | 61.50 |
| Total | | | 1,585.50 |

For the period January 1, 1966, to approximately June 23, 1966, the house in which Martha, Elizabeth, and Jeremy lived in Berkeley Heights was jointly owned by John and Martha. On approximately June 23, 1966, John conveyed his interest in the house to Martha in compliance with the May 24 order, and Martha became the sole owner of the property on that date. Its fair market rental value, unfurnished and exclusive of utilities and maintenance, was $275 per month in 1966 and $295 per month in 1967.

### OPINION

Pursuant to the May 24 order, Martha was required to pay John $20,000 as compensation for her conversion of his interest in their jointly owned stock, and John was required to pay Martha $20,000 as "accumulated alimony." The first issue we must decide is whether the $20,000 of so-called "accumulated alimony" is includable in Martha's gross income under section 71(a)(1) [6] and deductible by John under section 215.[7]

In general, section 71(a)(1) provides that a wife's gross income shall include periodic payments (whether or not made at regular intervals) received from her husband, if such payments are in discharge of a marital or family obligation imposed on the

---

[6] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[7] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

husband under a divorce decree or a written instrument incident thereto. Section 215 provides that a husband is allowed a deduction for amounts includable in his wife's gross income under section 71.

At the outset, we cannot accept Martha's argument that the $20,000 of "accumulated alimony" is excludable from her gross income because John never actually paid this amount to her as required by the New Jersey court. It is true that the parties have never physically delivered the $20,000 sums to each other as required by the May 24 order; however, we think the tax consequences should flow from the substance and not the form of that order. Regardless of whether the sums were ever physically exchanged, the net effect and substance of the order was that Martha's conversion of John's interest in the stock was condoned and John was left without remedy to recover his converted property. Accordingly, we agree with John that by offsetting the $20,000 amounts against each other, he, in effect, "paid" $20,000 in 1966 upon the entry of the order.

Our determination as to whether a particular payment qualifies as section 71 alimony for Federal tax purposes rests on the factual circumstances of each case, and we are not at all bound by the New Jersey court's characterization of the payment in question as "alimony." *Bardwell v. Commissioner,* 318 F.2d 786 (10th Cir. 1963), affg. 38 T.C. 84 (1962); *William M. Joslin, Sr.,* 52 T.C. 231 (1969); *Wilma Thompson,* 50 T.C. 522 (1968); *Ann Hairston Ryker,* 33 T.C. 924 (1960). Under the facts of the instant case, we think that John's payment of $20,000 (by way of the offset) was in settlement of a property-rights dispute between John and Martha and not in discharge of any obligation imposed on him "because of the marital or family relationship." Sec. 71(a)(1). As such, the payment was capital in nature and neither includable in Martha's 1966 gross income nor deductible by John in that year. Sec. 1.71-1(b)(4), Income Tax Regs.; *Lewis B. Jackson, Jr.,* 54 T.C. 125 (1970); *Jerome A. Blate,* 34 T.C. 121 (1960).

It is quite clear that from January 1962, when Martha transferred the jointly owned stock into her own name, until just prior to the entry of the court order on May 24, 1966, there existed a sharp legal conflict between the parties as to John's interest in the stock. The net result of, and we think the obvious purpose behind, the May 24 order was, in part, to forgive Martha's

conversion and release her from any future legal or equitable claims John might have against her. Therefore, we view John's "payment" of $20,000 as designed to settle this long-standing dispute as to property rights in the stock and not to provide Martha with alimony or support.

Also, the fact that the payment was in lump-sum form is a strong indication that a property settlement was involved. *Campbell v. Lake,* 220 F.2d 341 (5th Cir. 1955); *Ben C. Land,* 61 T.C. 675 (1974). In addition, we place some importance on the fact that the order provided for alimony of $200 per week in one paragraph, while including the "accumulated alimony" provision in a later paragraph sandwiched between two obvious property settlement provisions (conveyance of the house and transfer of the insurance policies). See *Knowles v. United States,* 182 F.Supp. 150 (S.D. Miss. 1960), affd. per curiam 290 F.2d 584 (5th Cir. 1961). Finally, we note that it is contrary to settled law in New Jersey to award retroactive alimony. *Raymond v. Raymond,* 39 N.J. Super. 24, 120 A.2d 270 (N.J. Super. Ct. 1956). Thus, we think that the fact that the New Jersey court nevertheless framed the award as a form of retroactive alimony is evidence that a property settlement and not bona fide alimony support was intended. See *Lewis B. Jackson, Jr., supra* at 131.

There exists yet another reason why John's $20,000 "payment" does not qualify under section 71. In order to fit into the statutory scheme of section 71(a)(1), the payments must be "periodic." As a general rule, a payment or payments discharging all or part of a principal sum specified in the decree is not treated as a "periodic payment." Sec. 71(c)(1).[8] The only exceptions to this rule are if the payments of the principal sum are spread out over more than 10 years or are subject to certain contingencies.

---

[8] (c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

Sec. 71(c)(2); sec. 1.71-1(d)(3), Income Tax Regs. John's payment of $20,000 was quite clearly a one-time lump-sum payment discharging a principal sum specified in the decree and subject to no contingencies whatsoever. As such, assuming arguendo that the payment was in the nature of support, such payment was not "periodic" and cannot qualify as an alimony payment under section 71(a)(1).

The only other issue remaining for our decision is whether John or Martha is entitled to the dependency exemption for Elizabeth for the years at issue.

For the year 1966 our decision rests on a determination as to which parent provided more than one-half of Elizabeth's total support for that year. Sec. 152(a);[9] *Aaron F. Vance,* 36 T.C. 547, 549 (1961). However, for the year 1967, we must turn to section 152(e)[10] (applicable to taxable years beginning after December 31, 1966), which provides, in part, that in the case of divorced parents a noncustodial parent is entitled to the dependency exemption if he provided at least $1,200 during the calendar year toward the child's support, unless the custodial parent can "clearly establish" that she provided more support for the child

---

[9] SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer):

(1) A son or daughter of the taxpayer, or a descendant of either,

[10] (e) SUPPORT TEST IN CASE OF CHILD OF DIVORCED PARENTS, ET CETERA.—

(1) GENERAL RULE.—If—

(A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,

such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody).

(2) SPECIAL RULE.—The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if—

* * *

(B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and

(ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody.

during that year than did the noncustodial parent. Sec. 152(e)(2)(B). In order to "clearly establish" her support, the custodial parent must show, by a clear preponderance of the evidence, that she provided more support than the noncustodial parent. *Allen E. Labay,* 55 T.C. 6 (1970), affd. per curiam 450 F.2d 280 (5th Cir. 1971).

There is no dispute as to the amount of John's payments for Elizabeth's support during the years at issue—in compliance with the May 24 order he provided $1,050 in 1966 and $1,800 in 1967. Martha's effort to prove that she contributed in excess of these amounts is based on informal records she prepared at the close of each year and on a professional appraisal she commissioned as to the fair market rental value of her home for 1966 and 1967.

Although we think that more formal and precise documentary proof as to the expenses Martha allegedly incurred on Elizabeth's behalf would have been desirable, after a careful examination of the record before us, we are satisfied that her records and her testimony at trial are sufficiently credible to establish her support payments for the years at issue. In our findings of fact we have set forth those major expenditures Martha incurred during the years at issue and the portions thereof allocable to Elizabeth. In 1966, her expenditures made on Elizabeth's behalf amounted to $1,585.69, and in 1967 they totaled $1,585.50.

Martha is also entitled to include in the computation of her support payments the value of any lodging provided to Elizabeth, and the amount of such support is determined on the basis of the fair market rental value of the premises allocable to the child. Sec. 1.152-1(a)(1)(i), Income Tax Regs.; *Emil Blarek,* 23 T.C. 1037 (1955); *William C. Haynes,* 23 T.C. 1046 (1955).

We have no hesitancy accepting the fair market rental appraisal commissioned by Martha and presented as evidence in this case. The values determined therein seem reasonable and were not derogated by John or respondent. According to this valuation, the fair market rental value of the house (unfurnished and exclusive of utilities and maintenance) was $275 per month in 1966 and $295 per month in 1967.

For approximately the first 6 months of 1966, the house in which Martha and Elizabeth (and Jeremy) lived was jointly owned by Martha and John. Therefore, for this period of time each is credited with furnishing one-half of Elizabeth's lodging

support. *Eva L. Lindberg,* 46 T.C. 243 (1966). Pursuant to the May 24 order, however, John conveyed his interest in the house to Martha about midway through 1966 and, for approximately the last 6 months of that year and for all of 1967, Martha was the sole owner of the house and is considered to have provided all of Elizabeth's lodging.

Accordingly, Martha's support payments are increased by $550 [11] for 1966, and by $1,041.42 [12] for 1967. Combining these figures with the previous expenses we have found Martha to have incurred on Elizabeth's behalf, she clearly provided more than one-half of her daughter's total support in 1966, and in 1967 her support payments were in excess of those provided by John. Thus, she is entitled to the dependency exemption for both years.

*Decisions will be entered under Rule 155.*

---

[11] For the first 6 months of 1966 each is treated as providing one-half of Elizabeth's lodging support. These amounts simply cancel each other out. The one-third of the house allocable to Elizabeth for the remaining 6 months of that year at $275 per month equals $550.

[12] The annual fair market rental value of the house for 1967 was $3,540 ($295 per month for 12 months). However, Martha operated a small business out of the house and attributed $415.74 of the house's annual rental value to that business. One-third of the remaining $3,124.26 amounts to $1,041.42.