WALTER A. GRAFF, III, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Graff v. Commissioner
Docket No. 2515-78.
United States Tax Court
T.C. Memo 1982-447; 1982 Tax Ct. Memo LEXIS 291; 44 T.C.M. (CCH) 701; T.C.M. (RIA) 82447; August 4, 1982. *291 Held: Petitioner, by failing to show that his former spouse was not a title owner of certain properties received by him pursuant to a divorce decree, did not bear his burden of proving that payments made by him to his former spouse were in the nature of support. Accordingly, the payments are not deductible. David L. Moore, for the petitioner. Jan Pierce, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's Federal income tax of $605 and $1,042 for the taxable years 1974 and 1975, respectively. Due to a concession, the sole issue presented for our decision is whether certain payments made by petitioner to his former spouse were support payments or whether the transfers were in satisfaction of the property rights of the former spouse. FINDINGS OF FACT Some of the facts have been stipulated and are so found. These facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioner Walter A. Graff, III, resided in Ashland, Oregon, at the time he filed his petition herein. His Federal income tax returns for 1974 and 1975 were filed with the Internal Revenue Service *292 Center in Ogden, Utah. Petitioner and Ann Cramer (formerly Ann Darland) were married on July 23, 1960. On April 22, 1961 the only child of this marriage was born. Petitioner and Cramer were divorced on August 28, 1973. During the marriage, the wife did not work outside the home except during the final year of the marriage. In 1964 or 1965 petitioner and Cramer purchased a home in Stockton, California. Although petitioner supplied the funds for purchase, the home was jointly owned by petitioner and Cramer. In 1966 or 1967 they sold the Stockton residence and reinvested the proceeds of that sale in a home in Medford, Oregon. Husband and wife were joint owners of the Medford property. During 1969 or 1970 petitioner acquired an interest in Hunter's Tavern. In order to purchase the tavern business, a bank loan was secured. The bank required that petitioner's wife, along with petitioner, sign the necessary promissory note. In 1970 or 1971 petitioner sought to acquire an interest in C & W Broadcasters, Inc. In connection with this acquisition a loan was secured by petitioner. Both husband and wife signed a promissory note in order to acquire the borrowed funds. Petitioner also *293 acquired some commercial realty in Stockton in the mid-1960's. Petitioner and his former wife were listed as co-owners of the property. Ann Cramer was employed outside the marital home only during the last year of the 13-year marriage. The funds she earned in that year were not used for the acquisition of any of the interests enumerated above. She did not inherit any property during the marriage. The assets described above were acquired from funds supplied by petitioner. Petitioner obtained the moneys through his work and from family trust funds. Petitioner and Cramer, each represented by an attorney, negotiated the terms of their marriage dissolution. Cramer specifically requested a property settlement. The request was rejected by petitioner and judicial proceedings were necessary to resolve the issue. On June 28, 1973 a Decree of Dissolution of Marriage was entered by Judge Loren L. Sawyer of the Circuit Court of the State of Oregon for Jackson County thereby ending the marriage of petitioner and Ann Cramer as of August 28, 1973. In addition the court decree contained the following relevant provisions: IT IS FURTHER ORDERED, ADJUDGED, DETERMINED AND DECREED that respondent *294 be and she hereby is, awarded the custody of VERONICA LYNN GRAFF, born April 22, 1961 with the right of the petitioner to have visitation at reasonable times and places, and IT IS FURTHER ORDERED, ADJUDGED AND DECREED that petitioner pay to the clerk of the court on behalf of the respondent the sum of $200 per month in support of the minor child of the parties until said child attains her majority or sooner becomes emancipated, and IT IS FURTHER ORDERED, ADJUDGED AND DECREED that petitioner pay all the reasonable dental and medical expenses incurred on behalf of said minor child during her minority, together with any tuition charges required for education, and IT IS FURTHER ORDERED that the child support payments shall be made on the 5th day of each month, the first payment to commence on July 5, 1973 and on the 5th day of each month thereafter, and IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the respondent be, and she hereby is awarded all of the household furniture and furnishings of the parties now in her possession and located at 2020 Hybiscus, Medford, Oregon, together with all jewelry in her possession, and Datsun automobile, and IT IS FURTHER ORDERED, ADJUDGED AND DECREED *295 that the respondent be and she hereby is awarded the following real property located at 2020 Hybiscus, Medford, Oregon, described as follows: Lot 3, Block 16, Blossom Hill Terrace No. 4 SUBJECT TO the note and mortgage against said real property which note and mortgage respondent shall pay and hold petitioner harmless from any liability thereon. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that respondent be awarded the sum of $34,000 for her portion of the property owned by the parties, which sum is to be paid at the monthly rate of $208.34, the first monthly payment to be made on July 28, 1973 and a like monthly payment on the 28th day of each month thereafter. There shall be no interest for the first year. Interest shall accrue at 8 percent per annum on the unpaid balance on and after June 28, 1974. Interest shall be paid monthly commencing with July 28, 1974 in addition to the payment on principal. In the event petitioner should fail to make the monthly payments as required herein, the entire balance shall become due if such default is not cured or paid within 45 days from the due date of such monthly payment. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that petitioner be, *296 and he hereby is, awarded the following described real and personal property of the parties not herein awarded to respondent. 1. All interest of the parties in Hunter's Tavern, a co-partnership. 2. All interest of any kind in C & W Broadcaster's Inc., including real property. 3. Business building located at 2309 North California, Stockton, California. 4. All household furniture and furnishings and personal effects now in possession of petitioner. 5. All marketable securities. 6. All notes receivable. 7. All accounts receivable. 8. All office furniture and equipment. 9. All interest in two trusts, one wherein Northern Trust Company, Chicago, Illinois is trustee and Walter A. Graff, Jr. is trustee. Some confusion over the terms of the decree of dissolution arose. After some correspondence among Judge Sawyer, petitioner's matrimonial attorney and Cramer's attorney, Judge Sawyer, in an attempt to clarify provisions of the decree, sent a letter, dated July 13, 1973, to the two attorneys. The relevant portions of the letter provide: I apologize for confusion on the payment of $2,500 (i.e., $208.34 times 12). Apparently this matter was not spelled out clearly when I rendered *297 my decision from the Bench. [Parenthetical phrase added.] It was my determination that the $2,500 payment should be made in monthly installments. I felt with the monthly payment from the trust account plus the child support payment that this would give the petitioner an adequate monthly income to provide for her and the child, along with her working. If Mr. Deatherage will make the changes I have indicated my secretary will forward the decree to me in Nevada and I will sign it so that the matter can be resolved between the parties as quickly as possible. Mr. Deatherage was the matrimonial attorney of petitioner, Walter A. Graff, III. A formal charge of the decree was not effected. Payments made by petitioner to his former spouse pursuant to the decree of marriage dissolution were posted on ledger cards in the office of the Clerk of the Circuit Court of Jackson County. These records indicate that the decreed monthly payments of $208.34 were for a property settlement On his 1974 and 1975 tax returns petitioner deducted the monthly payments of $208.34 he made to his former spouse. Thus, in each of the years in issue he claimed a $2,500 alimony deduction. In his notice of deficiency *298 dated December 5, 1977 respondent disallowed petitioner's alimony deductions. OPINION Section 215 [1] allows a husband a deduction for alimony payments that are taxable to the wife and paid her during the husband's taxable year. Section 71(a) includes in the wife's income periodic payments received in discharge of a legal obligation which, because of the marital relationship, is incurred by the husband. Section 71(a) applies only to payments made in recognition of the marital obligation to support, which is made specific by the decree, instrument or agreement. Section 1.71-1(b)(4), Income Tax Regs. Payments which effect a property division or which satisfy property rights are capital in nature and hence are not includable in the wife's gross income or deductible by the husband. Shottenstein v. Commissioner,75 T.C. 451, 456 (1980), Gammill v. Commissioner,73 T.C. 921, 926 (1980), on appeal (10th Cir., June 3, 1980); Wright v. Commissioner,62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976). The payments in question herein were *299 incurred by petitioner pursuant to a decree of dissolution of marriage issued by the Jackson County Circuit Court on July 13, 1973. The disputed payments total $2,500 per year ($208.34 per month). The parties do not dispute the periodic nature of the payments. [2] Nor is there any disagreement that the obligation to make the payments was imposed by the divorce decree. Rather, the parties focus their attentions on whether the payments satisfy a legal obligation imposed because of the marital relationship or whether the payments represent a property settlement. Petitioner argues that any property claims which his former wife may have had were extinguished by the provision of the decree granting the former wife the *300 marital abode, all furniture, jewelry in her possession and an automobile. He maintains that all funds used to acquire other assets including interests in C & W Broadcaster's Inc., Hunter's Tavern and a business building in Stockton, were supplied by him. As such, petitioner maintains that his former spouse had no rights in these assets and accordingly the decreed payment of $34,000 ($208.34 per month) is representative of a support obligation. Petitioner highlights his position by noting the absence from the decree of any other provision for other provision for alimony or support. Respondent first points to the fact that the disputed payments were labeled as a property settlement in the decree. He then notes that the $34,000 award bore interest at the rate of 8 percent after the first year of payments. He further points out that the payments were not subject to the contingencies of death and remarriage. Accordingly, he maintains that all elements of a property settlement are present. Respondent attempts to discredit petitioner's argument that the wife's failure to contribute funds toward the acquisition of C & W Broadcaster's Inc., Hunter's Tavern and the Stockton building *301 precludes a finding that she had any property rights therein. First, he maintains that, regardless of the source of the funds used to purchase the assets which were awarded to petitioner by the divorce decree, the testimony of petitioner's former spouse points to the joint ownership of these assets. Second, respondent maintains that assuming arguendo that petitioner's spouse was not an owner of these properties, Oregon law (Ore. Rev. Stat. section 107.105) [3] *302 *303 grants sufficient rights to a wife in her husband's property so as to support a division of marital property. [4] *304 The character of the payments in issue is determined through an analysis of the attending facts and circumstances. Jackson v. Commissioner,54 T.C. 125, 130 (1970); Ryker v. Commissioner,33 T.C. 924 (1960). Labels assigned to the payments by a court in a divorce decree are not conclusive. Gammill v. Commissioner,supra at 926; Thompson v. Commissioner,50 T.C. 522, 525 (1968). Accordingly, the citation to the provision of the divorce decree herein which awards petitioner's former spouse the sum of $34,000 "for her portion of the property owned by the parties" is not dispositive of the instant case. Petitioner bears the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Thompson v. Commissioner,supra;Rule 142(a), Tax Court Rules of Practice and Procedure. We hold that petitioner has not borne that burden of proof. There has not been any persuasive showing by petitioner that his former spouse did not have any co-ownership interests in the assets which were awarded to him pursuant to the divorce *305 decree. Petitioner's attempt to satisfy his burden of proof on this issue consists mainly of a verbal allegation that his former wife was not listed as a joint owner of any of the relevant assets upon their acquisition. On the other side of the coin, his former spouse testified herein that she was a joint owner thereof. Considering this conflicting testimony and the fact that the instruments conveying the relevant assets to the marital domain are most likely in the possession of petitioner, we are reluctant to find that petitioner's allegation that he was the sole title owner of these properties satisfies his burden of proof. Rather, although not entirely free from doubt, we believe that petitioner's failure to produce evidence within his domain, more likely points to the fact that such evidence, if introduced, would prove unfavorable to petitioner. See Glimco v. Commissioner,397 F.2d 537 (7th Cir. 1968), affg. a Memorandum Opinion of this Court; Roberts v. Commissioner,62 T.C. 834 (1974). In any event, we hold that, under the circumstances, petitioner has not carried his burden of proving that his former spouse was not a co-owner of the properties. In light of petitioner's failure *306 to persuade us that his former spouse was not a title owner of the assets awarded to him and in light of our concern for rights obtained under local law, Helvering v. Stuart,317 U.S. 154 (1942); Estate of Gamble v. Commissioner,69 T.C. 942, 948 (1978), we point to Ore. Rev. Stat. section 108.090 which addresses transfers between husband and wife: 108.090 Conveyances, transfers and liens between spouses; creation and dissolution of estates by entireties; validation of prior dissolutions.
(1) A conveyance, transfer or lien executed by either husband or wife to or in favor of the other is valid to the same extent as between other persons. (2) When a husband or wife conveys to the other an undivided one-half of any real property and retains a like undivided half, and in such conveyance there are used words indicating an intention to create an estate in entirety, said husband and wife hold the real property described in the conveyance by the entirety. Additionally, Ore. Rev. Stat. section 108.060 provides: 108.060 Noninterest of one spouse in property of other. When property is owned by either husband or wife, the other has no interest therein which can be the subject of contract *307 between them, or such interest as will make the same liable for the contracts or liabilities of either the husband or wife who is not the owner of the property except as provided in ORS 108.040. More particularly, Oregon law provides that where a spouse supplies the consideration for the purchase of real property and the conveyance is to husband and wife a presumption is raised that the contributing spouse has made a gift to the noncontributing spouse. Palmer v. Protrka,257 Ore. 23, 476 P.2d 185, 189 (1970). See Smith v. Durkee,121 Ore. 86, 90, 254 P. 207 (1927). Thus, the listing of petitioner's wife as a joint owner of the relevant properties would have clearly established her co-ownership rights under Oregon law. Such co-ownership rights, while admittedly acquired by gift, would nonetheless support a division of property recognizable for tax purposes. See section 1.71-1(c)(4), Income Tax Regs.; [5] *308 United States v. Davis,370 U.S. 65, 70 (1962). We are aware of the existence of several cases where it was determined that the wife did not have a property right sufficient to support a tax-free division of property even though she was the named owner of certain relevant properties. In Pulliam v. Commissioner,39 T.C. 883 (1963), affd. 329 F.2d 97 (10th Cir. 1964), we held that a husband was to be taxed on the gain inherent in a farm transferred to his former spouse pursuant to a Colorado court divorce decree. Although the husband paid for the farm, title was taken in the wife's name. We found that title was taken in the wife's *309 name in order to secure an additional grain-growing allowance rather than to make a gift to the wife. Accordingly, we held that the wife had no actual property right in the farm despite her listing as owner. On the basis of United States v. Davis,supra, we held that the husband had taxable gain. In Swaim v. Commissioner,50 T.C. 302 (1968), affd. 417 F.2d 353 (6th Cir. 1969), we held that the taxpayer-husband realized a gain when a Kentucky court awarded an installment note to the husband's former spouse. We so held despite the fact that the transferred note was payable to and in possession of the former spouse. Our holding, however, was premised on the holding of the Kentucky court which granted the divorce. The Kentucky court in effect held that the husband was the owner of the note prior to the divorce. After concluding that the local court's pronoucement was based upon well established points of Kentucky law, we determined that the award of the note to the wife was a taxable transfer to the husband. Pulliam and Swaim are clearly distinguishable from the instant case. In the two former cases there were adequate grounds upon which to ignore the fact that the wife was a listed *310 owner of property. In Pulliam the facts clearly showed that additional grain-growing allowances were desired, thus negating any inference that there was a gift between husband and wife. In Swaim we relied upon local law which mandated the disregard for title ownership. In the instant case, however, we have no such grounds for ignoring title ownership. Moreover, there is no evidence rebutting the local law presumption that a gift of the real property involved was made. We further note that respondent does not merely rely on the presumption of correctness resting in his favor. First, respondent points to the divorce decree which provides for a fixed sum award of $34,000 bearing interest at 8 percent. While not conclusive, the existence of a specific sum is a significant characteristic of a property settlement. See Campbell v. Lake,220 F.2d 341 (5th Cir. 1955); Pierce v. Commissioner,66 T.C. 840, 847 (1976); Bernatschke v. Commissioner,176 Ct. Cl. 1234, 364 F.2d 400, 408 (1966). Similarly, there is no provision that the payments would cease upon the death or remarriage of petitioner's former spouse. See Shottenstein v. Commissioner,75 T.C. 451, 457 (1980); Land v. Commissioner,61 T.C. 675, 683 (1974). *311 Considering this factual setting we believe it was incumbent upon petitioner to introduce documents evidencing that his wife was not a co-owner of the relevant properties. Had he introduced such documents we would then have faced the issue of whether petitioner's former spouse was vested with sufficient property rights by virtue of Oregon's divorce law (Ore. Rev. Stat. section 107.105 ) so as to support a division of property recognizable for tax purposes. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Section 71(c)(1) provides, inter alia, that installment payments discharging an obligation the principal sum of which is specified in a decree shall not be treated as periodic payments. However, section 71(c)(2) provides that such installment payments shall be deemed periodic if the principal sum is to be paid over more than 10 years. The principal figure of $34,000 which petitioner was ordered to pay was to be in installments spanning a period of greater than 10 years.↩
3. Respondent cites Ore. Rev. Stat. section 107.105 as amended in 1977. We note that were we to decide the case on the basis of that statute, we would apply the 1973 version of the statute in view of the fact that the divorce decree was issued in 1973. Ore. Rev. Stat. section 107.105 provides in relevant portion: 107.105 Provisions of decree of dissolution or annulment. (1) Whenever a marriage is declared void or dissolved, the court has power further to decree as follows: (c) For the support of a party, in gross or in instalments, or both, such amount of money for such period of time as it may be just and equitable for the other party to contribute. The court may approve, ratify and decree voluntary property settlement agreements providing for contribution to the support of a party. If requested by either party, the court shall make and set forth in its decree the findings of fact upon which its award or denial of support was based. In making such support order, the court shall consider the following matters: (A) The duration of the marriage; (B) The ages of the parties; (C) Their health and conditions; (D) Their work experience and earning capacities; (E) Their financial conditions, resources and property rights; (F) The provisions of the decree relating to custody of the minor children of the parties; (G) The ages, health and dependency conditions of the children of the parties, or either of them; and (H) Such other matters as the court shall deem relevant. (d) For the delivery to one party of such party's personal property in the possession or control of the other at the time of the giving of the decree. (e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. 4. We have addressed several State statutes in order to determine whether certain property rights conferred upon a wife within the context of marital discord were sufficient to support a division of property. See e.g. Shottenstein v. Commissioner,75 T.C. 451 (1980). (Ohio Rev. Code Ann. section 3105.18 (Page) did not confer such property rights on the particular wife); Wright v. Commissioner,62 T.C. 377 (1974), affd. 543 F.2d 593 (7th Cir. 1976); (Wis. Stat. Ann. section 247.26 did not grant wife sufficient rights so as to justify a property settlement); Gammill v. Commissioner,73 T.C. 921, 926 (1980), on appeal (10th Cir. June 3, 1980); Mills v. Commissioner,54 T.C. 608 (1970), affd. 442 F.2d 1149 (10th Cir. 1971); Jackson v. Commissioner,54 T.C. 125 (1970). (The latter three cases held that Okla. Stat. Ann tit. 12, section 1278 vested the wife with rights akin to those of a spouse in a community property jurisdiction and accordingly those rights provided the basis for a division of property.) However, because of our holding in the instant case, we need not reach the question of whether Ore. Rev. Stat. section 107.105 (amended 1977), which allows Oregon courts to decree a division of property, confers upon the wife sufficient property rights so as to support a property settlement recognizable for tax purposes.
5. SEC. 1.71-1. Alimony and separate maintenance payments income to wife or former wife.
(c) Alimony and separate maintenance payments attributable to property. * * * (4) Section 71(a)(1) or (2) does not apply to that part of any periodic payment attributable to that portion of any interest in property transferred in discharge of the husband's obligation under the decree of instrument incident to the divorce status or legal separation status, or transferred pursuant to the written separation agreement, which interest originally belonged to the wife. It will apply, however, if she received such interest from her husband in contemplation of or as an incident to the divorce or separation without adequate and full consideration in money or money's worth, other than the release of the husband or his property from marital obligations. * * *